IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TONEY GIBSON AND KEITH F. WHITE, SR., | § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:16-cv-157-L |
| CITY OF GARLAND AND GLENN BREYSACHER, | § § § | |
| Defendants. | § § § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Defendants the City of Garland, Texas and Glenn Breysacher each filed a motion to dismiss, *see* Dkt. Nos. 26 & 30, and United States District Judge Sam A. Lindsay referred both motions to the undersigned United States magistrate judge for hearing, if necessary, and findings and recommendations, *see* Dkt. No. 32.

Plaintiffs Toney Gibson and Keith F. White, Sr. filed responses, *see* Dkt. Nos. 27, 33, and Defendants filed replies, *see* Dkt. Nos. 28 & 34.

The undersigned issues the following findings of fact, conclusions of law, and recommendation that the Court should grant Defendant City of Garland, Texas's Partial Motion to Dismiss Plaintiffs' Second Amended Complaint [Dkt. No. 26] and should deny Defendant Glenn Breysacher's Motion to Dismiss [Dkt. No. 30].

### Background

Plaintiffs originally filed this racial discrimination lawsuit against their

-1-

employer, the City of Garland, on January 20, 2016. *See* Dkt. No. 2. Plaintiffs subsequently filed a second amended complaint in which they added their supervisor, Glenn Breysacher, as a defendant. *See* Dkt. No. 24. Plaintiffs assert claims against both Defendants under 42 U.S.C. § 1983 for violations of 42 U.S.C. § 1981 and the Equal Protection Clause and against the City for violation of the Texas Labor Code. *See id.*

The following facts are taken from the Second Amended Complaint, accepting, for purposes of deciding these motions to dismiss, all well-pleaded facts as true and viewing them in the light most favorable to Plaintiffs.

Plaintiff White began working for the City of Garland in December 1997 as a survey technician, and Plaintiff Gibson began working for the City of Garland in September 2001 as a survey party chief. Both Defendants are African American.

In 1998, Lamar Treybig directed racial slurs toward Plaintiff White. When White needed to use the restroom, Treybig would not stop the truck to allow him to go, causing White to urinate on himself several times. Treybig also physically attacked White, and Bill Heinze witnessed the altercation. Treybig was put on six months' probation, and, once the probation ended, Treybig started using racial slurs again. White reported Treybig's use of racial slurs to his supervisor, Allen Adams, and to human resources ("HR"), and Treybig was eventually terminated. Supervisor Adams then told White that, if it was the last thing he did, he would make sure he got rid of White. But Adams died, and the City hired Defendant Breysacher as a contract worker over the survey crew.

In 2006, each day from 7:00 a.m. to 9:30 a.m., City workers would sit in an area that they called the pit and make racial jokes. Two public works inspectors, Mike Meade and Johnny Welch, said they wanted to kill Mexicans, and Meade said that they needed to put towers along the Mexico border with guns to shoot the motherfuckers as they crossed and that he hated all people from the Middle East. Plaintiff Gibson reported the statements to Bill Heinze, who was a Senior Field Engineer, and Defendant Breysacher.

In 2007, Plaintiff Gibson reported Defendant Breysacher telling Wayne Terry, Neil D. Culver, and Larry Ferguson during the survey rodeo that he had to dummy down things for the black workers. After the racist comments and terroristic threats were reported, management isolated the black workers from the department. Every time that Plaintiffs came into the office and were sitting in the pit, everyone would get up and leave. Jay Altom, a public work inspector, was afraid to talk to Plaintiffs while any of his supervisors were around.

Also in 2007, Gibson also reported Breysacher to Bill Heinze, Lena Baker, and Priscilla Wilson for stealing City of Garland survey equipment. John Baker, who was then the Director of Engineering and is now Assistant City Manager, threatened Gibson's job in retaliation. White also reported Breysacher for stealing City survey equipment and illegal use of the City's procurement card.

Also in 2007, White was passed over for promotions. White applied for an inspector's position, but it went to Wally Garland, one of the workers who used racial slurs constantly. Garland did not make his six months' probation, and White was not

given the opportunity to fill the inspector's position. The criteria for the position was changed, but White's evaluation score stayed the same, and Breysacher "marked on White's review as if White were the problem."

In 2008, White, Gibson and Chris Woods were coming into the office, and Bill Smith, Construction Inspector Supervisor, came walking out of his office with a rifle in his hands at work. Both White and Gibson sought counseling at Abundant Life Counseling Center after seeing the gun at work.

Also in 2008, management retaliated against Defendants by stopping overtime for the survey crew while allowing everyone else to work overtime. Plaintiffs were two of the three men on the survey crew. The denial of overtime continues to the date of the complaint. Gibson sought counseling at Abundant Life Counseling Center for stress.

In 2013, a position became available for an inspector, and White was told that management was going to hire someone with bridge experience, even though the city had no bridge jobs. As of the date of complaint, no bridges have been or are being built in the City of Garland.

Also in 2013, both Gibson and White saw a hangman over White's seat on the dry erase board and a message on the other side of the board that said "f. u. bend me over." The drawing and message on the dry erase board were reported to Breysacher. Also, Chris Bentle had a picture of a gorilla on his tablet, and he said that it was Plaintiff Gibson, a big black gorilla. Defendant Breysacher was aware of the Bentle's picture and statement, but he did not tell Bentle to stop or report him.

In 2015, Plaintiff Gibson talked to Defendant Breysacher about pictures of a

monkey in the office. Breysacher said that a picture of a monkey was not racist and that it only applied to the person to whom it was directed. Gibson then reported the pictures to HR. Also, a stuffed monkey was placed in Leo Signey's chair, and Bonzo Chimp was placed over his name outside of his office door. Defendant Glenn Breysacher, Michael Meade, and Mike Rozelle, all members of management, were part of the stuffed monkey incident.

On June 8, 2015, Plaintiffs filed an Equal Employment Opportunity Commission discrimination claim based on the pictures and past history of racism in the office. Gibson talked to HR, and Michael Polocek wanted to talk to the Mayor and the City Council about what was going on in the office. Thereafter, both Plaintiffs were called into the HR office. Priscilla Wilson said that Plaintiffs were dividing and intimidating the office and that she was intimidated by Plaintiff Gibson. Plaintiff White suffered a mild seizure and subsequently sought counseling with Dennis Myles Caughy, LCSW, for emotional distress due to racial comments in the work place. After the meeting with HR, the markers that represented Plaintiffs on the office name board were removed as if they were no longer employed. The removal of the markers was reported to Defendant Breysacher.

On December 4, 2015, Plaintiffs had a meeting with the NAACP and HR about the discrimination, harassment, and hostile environment in the office, but nothing changed.

Plaintiffs allege that Defendants, by action or inaction, have demonstrated a deliberate indifference to Plaintiffs' constitutionally protected rights by: a. allowing

and adopting the custom of telling racial jokes and stories in the workplace involving shootings of or terroristic violence against minorities; b. allowing and adopting the custom of showing pictures of big black gorillas, hangman's nooses and actual stuffed monkeys around the office as a way to intimidate African American workers; [and] c. retaliating against Plaintiffs for their reports of harassment and hostile environment by threatening their jobs and not allowing Plaintiff to work overtime or be promoted, among other customs and/or actions." Dkt. No. 24 at 7. Plaintiffs contend that the facts alleged in their Second Amended Complaint "show that a policy or custom existed, that Defendant Glenn Breysacher and others actually or constructively knew of its existence, and that such custom or policy served as the moving force behind constitutional violations" – "including the constitutional right to be free from racial discrimination in employment and to enjoy the equal protection of the laws" – that they allege as to their Section 1983 claim. *Id.* at 8, 9. And Plaintiffs allege that "Defendant Breysacher, at all times relevant hereto, was acting under the color of law in his capacity as supervisor of Plaintiffs and his acts or omissions were conducted within the scope of his official duties of employment." *Id.*

The City filed a partial motion to dismiss Plaintiffs' second amended complaint. *See* Dkt. No. 26. The City contends that Plaintiffs fail to state a claim against the City for racial discrimination under 42 U.S.C. §§ 1981 and 1983 because Plaintiffs fail to identify or adequately allege a custom or policy that violated Plaintiffs' rights. The City also contends that Plaintiffs rely on alleged discriminatory actions that occurred outside the statute of limitations to support their Section 1981 claim. The City does not

move to dismiss the Texas Labor Code claim.

Breysacher filed a motion to dismiss, contending that Plaintiffs cannot assert a claim for discrimination under 42 U.S.C. §§ 1981 and 1983 against individual government employees and that Plaintiffs fail to state a Section 1981 claim against him because they have not alleged that he intentionally engaged in discriminatory conduct that resulted in an adverse employment action. *See* Dkt. No. 30. Breysacher also contends that, if Plaintiffs are allowed to assert a Section 1981 claim against him, he is entitled to qualified immunity, "which he will assert as a defense."

## Legal Standards

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'"

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id*. But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ____, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)). The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347, and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

## Analysis

As to their 42 U.S.C. § 1983 claim, which both the City and Breysacher move to dismiss, Plaintiffs contend that Defendants deprived them of their rights and

discriminated against them on account of their race in violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1981. *See* Dkt. No. 24 at 8-10.

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983); *see Banks v. Dallas Hous. Auth.*, 271 F.3d 605, 609 (5th Cir. 2001) (emphasizing that, "[i]n order to seek redress through § 1983, ... a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*" (quoting *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis in *Blessing*))). Section 1983 is not itself a source of substantive rights but, rather, merely provides a method for vindicating federal rights conferred elsewhere. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

A plaintiff may "assert claims of racial discrimination and retaliation against a government entity under 42 U.S.C. § 1981 and § 1983." *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 490 (5th Cir. 2011) (footnote omitted). "[S]ection 1981 does not provide for a cause of action independent of section 1983 against state actors, and ... the exclusive remedy for enforcement of rights secured by section 1981 is a cause of action brought pursuant to section 1983." *Harris v. City of Balch Springs*, 9 F. Supp. 3d 690, 702 (N.D. Tex. 2014) (citing *Jett v. Dallas Independent School District*, 491 U.S.

701, 733 (1989)); *accord Davis*, 448 F. App'x at 491 ("Suit must be brought under Section 1983, however, as Section 1981 does not itself provide for an independent cause of action." (citing *Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 463 (5th Cir. 2001) (citing *Jett*, 491 U.S. at 731))).

"Section 1983 and [T]itle VII are parallel causes of action. Accordingly, the inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." *Lauderdale v. Tex. Dep't of Crim. Justice, Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007) (citations and internal quotation marks omitted). That is, "a claim of racial discrimination under Section 1983 is essentially the same' as such a claim brought under Title VII." *Davis*, 448 F. App'x at 491 (internal quotation marks omitted). "To establish a violation of § 1981 a plaintiff must prove (1) he is a member of a protected class; (2) there was an intent to discriminate on that basis; and (3) the discrimination concerned one or more of the activities in the statute." *Crawford v. City of Houston, Tex.*, 260 F. App'x 650, 652 (5th Cir. 2007) (footnote omitted); *see also Mangalvedkar v. Chousand*, No. 3:15-cv-944-L, 2016 WL 687168, at *3 (N.D. Tex. Feb. 19, 2016) ("To establish a prima facie claim of racial discrimination pursuant to § 1981, 'a plaintiff must show: (1) that he is a racial minority; (2) that the defendant intended to discriminate against him on the basis of race; and (3) that the discrimination concerns one or more of the activities enumerated in the statute.'" *Id.* (quoting *Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011) (internal citation omitted)).

Plaintiffs have properly brought the their Section 1981 claim against the City

and Breysacher pursuant to Section 1983.

I.      Plaintiffs have stated a Section 1983 claim against the City.

The City contends that Plaintiffs have failed to state a Section 1983 claim because they fail to identify or adequately allege any particular custom or policy that violated Plaintiffs' rights and argue that Plaintiffs' claim is based on actions that occurred outside the statue of limitations. *See* Dkt. No. 26 at 3-7.

"A municipality is a 'person' subject to suit under Section 1983. A local government entity may be sued if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Alternatively, municipal liability may attach where the constitutional deprivation is pursuant to a governmental custom, even if such custom has not received formal approval." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (internal quotation marks and citations omitted).

Plaintiffs may not hold a city liable under Section 1983 on the theory of respondeat superior, *see Monnell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 694 (1978), and "must instead satisfy the 'custom or policy' test fashioned for suits against a municipality under § 1983," *Evans v. City of Houston*, 246 F.3d 344, 358 (5th Cir. 2001). "This requires proof of three elements in addition to the underlying claim of a violation of rights: a policymaker; an official policy; and a violation of constitutional [or statutory] rights whose moving force is the policy or custom." *Crawford*, 260 F. App'x at 652 (internal quotation marks and footnote omitted).

"The first requirement for imposing municipal liability is proof that an official

policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality. A policymaker is one who takes the place of the governing body in a designated area of city administration. He or she must decide the goals for a particular city function and devise the means of achieving those goals. .... A city's governing body may delegate policymaking authority (1) by express statement or formal action or (2) it may, by its conduct or practice, encourage or acknowledge the agent in a policymaking role." *Zarnow*, 614 F.3d at 167 (internal quotation marks and citations omitted).

"There is a fine distinction between a policymaker and a decisionmaker. The fact that an official's decisions are final is insufficient to demonstrate policymaker status." *Id.* (citation omitted). The United States Court of Appeals for the Fifth Circuit "has long distinguished between final decisionmaking authority and final policymaking authority. A municipal policymaker is someone who has the responsibility for making law or setting policy in any given area of a local government's business. Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. Whether an official possesses final policymaking authority for purposes of municipal liability is a question of state and local law." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (internal quotation marks and citations omitted). "The nature of the administrative oversight is important in determining 'policymaker' status. An official may be a policymaker even if a separate governing body retains some powers. An official may be termed a 'policymaker' even if the municipality retains the prerogative of the purse and final

legal control by which it may limit or revoke the authority of the official." *Zarnow*, 614 F.3d at 168 (citations omitted).

"[F]or purposes of Rule 12(b)(6), we hold that a plaintiff is not required to single out the specific policymaker in his complaint; instead, a plaintiff need only plead *facts* that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker." *Groden v. City of Dallas, Tex.*, 826 F.3d 280 (5th Cir. 2016) (emphasis in original). And "the specific identity of the policymaker is a legal question that need not be pled; the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." *Id.* (footnote omitted). Based on "this distinction between facts – which must be pled in a complaint and, ultimately, proven to a jury – and law," Plaintiffs need not, "as a pleading requirement, identify the policymaker." *Id.* When the policymaker element is challenged on a Rule 12(b)(6) motion, the question for the Court is whether Plaintiffs pleaded facts that, read in the light most favorable to Plaintiffs, show the required policymaker element. *See id.* And, "[t]o answer this question, [the Court] first turn[s] to state law to find out just who is the policymaker of the city." *Id.* And, "as is often the case, answering this question [can be] a simple matter of consulting [the Fifth Circuit's] binding precedent." *Id.*

The Court must also "consider whether the allegedly unconstitutional action constitutes a 'custom or policy' of the municipality." *Zarnow*, 614 F.3d at 168. A municipality is liable for the deprivation of rights guaranteed by the constitution or

federal law only if the plaintiff can identify an "official policy" of the city that "cause[d] one of its employees to violate the plaintiff's constitutional rights." *Monell*, 436 U.S. at 692; *see also Evans*, 246 F.3d at 358 (applying "custom or policy" test for municipality under Section 1983 to claim against a city under Section 1981).

The Fifth Circuit has defined an "official policy," for purposes of Section 1983 liability, as "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). Alternatively, official policy is "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.*; *accord Cox v. City of Dallas, Tex.*, 430 F.3d 734, 748 (5th Cir. 2005). "A policy is official only when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy." *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (internal quotation marks omitted).

"A plaintiff may prove the existence of a 'custom or policy' in one of two ways. First, a pattern of unconstitutional conduct may be shown on the part of municipal actors or employees. A pattern of conduct is necessary only where the municipal actors are *not* policymakers. Alternatively, it may be shown that a *final policymaker* took a single unconstitutional action." *Zarnow*, 614 F.3d at 169 (emphasis in original; citations omitted). "A customary policy consists of actions that have occurred for so long

-14-

and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Id.* (citing *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc)). "[A]n act performed pursuant to a custom that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Cox*, 430 F.3d at 748 (internal quotation marks and footnote omitted).

As to establishing municipal liability, "[t]he policymaker must have either actual or constructive knowledge of the alleged policy." *Id.* at 748-49 (footnotes omitted). "Knowledge on the part of a policymaker that a constitutional violation will most likely result from a given official custom or policy is a *sine qua non* of municipal liability under section 1983. Thus, for municipal liability to attach under section 1983 a plaintiff must demonstrate [a]ctual or constructive knowledge of such custom ... attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Where an official policy or practice is unconstitutional on its face, it necessarily follows that a policymaker was not only aware of the specific policy, but was also aware that a constitutional violation will most likely occur. Where, however, ... an alleged policy or custom is facially innocuous, establishing the requisite official knowledge requires that a plaintiff establish that an official policy was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result." *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003) (internal quotation marks, citations, and footnote

omitted).

Finally, "Plaintiffs must meet a heightened standard of causation in order to hold a municipality liable under § 1983." *Valle*, 613 F.3d at 546. "The final element requires the plaintiff to prove causation; that is, that the policy or custom is the cause in fact of the rights violation." *Crawford*, 260 F. App'x at 652 (internal quotation marks and footnote omitted). "This connection must be more than a mere 'but for' coupling between cause and effect." *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992). "In other words, a plaintiff must show direct causation," *James*, 577 F.3d at 617, – that is, "that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (internal quotation marks omitted). Thus, Plaintiffs therefore "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* (internal quotation marks omitted); *see also Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result." (internal quotation marks omitted)). "Deliberate indifference of this sort is a stringent test, and a showing of simple or even heightened negligence will not suffice to prove municipal culpability. It follows that each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff, and it must be determined whether each one is facially constitutional or unconstitutional."

-16-

*Piotrowski*, 237 F.3d at 579-80 (internal quotation marks and citations omitted). "Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight." *James*, 577 F.3d at 617-18 (internal quotation marks omitted).

To survive a Rule 12(b)(6) motion as to the second third elements, a plaintiff must plead sufficient facts to show an unconstitutional policy that was the moving force behind his treatment in violation of a federal constitutional or statutory right. *See Groden*, 826 F.3d 280.

Additionally, "[a] statute of limitations defense may be properly raised in a Rule 12(b)(6) motion to dismiss when the complaint affirmatively shows that the claims are time-barred." *Delhomme v. Caremark Rx Inc.*, 232 F.R.D. 573, 579 (N.D. Tex. 2005); *see also United States v. Bantau*, 907 F. Supp. 988, 990 (N.D. Tex. 1995) (citing *Herron v. Herron*, 255 F.2d 589, 593 (5th Cir. 1958)). That is, "'[a] statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.'" *Ransom v. Nat'l City Mortgage Co.*, No. 3:13-cv-4642-L, 2014 WL 717198, at *4 (N.D. Tex. Feb. 25, 2014) (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)), *aff'd*, 595 F. App'x 304 (5th Cir. 2014); *see also Lucky v. Haynes*, No. 3:14-cv-2915-L, 2015 WL 4525689, at *3 (N.D. Tex. July 23, 2015) (collecting cases).

The statute of limitations on Section 1981 and 1983 claim is two years. *See Price v. City of San Antonio*, 431 F.3d 890, 892 (5th Cir. 2005) (Section 1983 claims); *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 250 (5th Cir. 1980) (Section

1981 claims). To determine when the statue of limitations commences to run under Sections 1981 and 1983, the Court must determine when the deprivation forbidden by Section 1983 or the denial of equal benefit of the laws forbidden by Section 1981 occurred. *See Perez v. Laredo Junior Coll.*, 706 F.2d 731, 733 (5th Cir. 1983). "[T]he continuing violation theory is available to remedy employment practices and policies that operate to deny employees their protected rights if the offending practice continued to be enforced during the limitations period." *Id.* (applying continuing violation theory in Section 1983 and Section 1981 employment case). "To establish a continuing violation, however, the plaintiff must establish that the unconstitutional or illegal act was part of 'standard operating procedure,' a fixed and continuing practice." *Id.* (quoting *Jewett v. Int'l Telephone & Telegraph Corp.*, 653 F.2d 89, 92 (3d. Cir. 1981)).

If the discrimination alleged is a single act, the statute begins to run at the time of the act. *See id.* If, on the other hand, the statutory violation does not occur at a single moment but in a series of separate acts, and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation, and only those violations preceding the filing of the complaint by the full limitations period are foreclosed. *See id.* at 733-34. Similarly, if the statutory violation occurs as a result of a continuing policy, itself illegal, then the statute does not foreclose an action aimed at the company's enforcement of the policy within the limitations period. *See id.* at 734.

Plaintiffs allege that Defendants have engaged in a single, continuous course of

discriminatory conduct that is so common and well-settled as to constitute a custom that fairly represents municipal policy racial discrimination. Plaintiffs also allege that the City knowingly allowed the discriminatory conduct to continue within the limitations period. For example, Plaintiffs allege that, in 2015, they reported pictures of a monkey in the office and a stuffed monkey was placed in an employee's chair and that the name Bozo Chimp was placed over his nameplate by members of management. According to Plaintiffs, "African Americans have been called monkeys for many years." An HR representative accused Plaintiffs of dividing and intimidating the office and stated that she was intimidated by Plaintiff Gibson. Markers for their names were removed from the office name board so that it appeared they were no longer employed. And the allegedly retaliatory prohibition on overtime, which applied only to the survey crew of which Plaintiffs were members, continued from 2008 until the present.

This Court has previously explained that the final policymaker for the City of Garland in the context of a claim for municipal liability is "the Garland City Council, the governing body which makes policy for the City, or some official to whom the Garland City Council had delegated policy-making authority." *Okonkwo v. City of Garland, Tex.*, No. 3:01-cv-1938-L, 2003 WL 21728187, at *6 (N.D. Tex. Mar. 14, 2003). Plaintiffs are not required to plead the identity of the policymaker, but they are required to plead sufficient facts to suggest, for the purpose of a Rule 12(b)(6) motion, that the City, through the City Council or some official to whom the Garland City Council had delegated policy-making authority, constructively knew of the customs that Plaintiffs allege as the basis for their Section 1983 claim.

Plaintiffs' Second Amended Complaint does not include factual content that allows the Court to draw the reasonable inference that Defendant Breysacher or any other official whom Plaintiffs allege actually or constructively knew of the alleged customer was an official to whom the City's policymakers (council members) had delegated relevant policy-making authority – that is, final authority to establish municipal policy with respect to the action ordered.

Accordingly, the undersigned concludes that Plaintiffs have failed to plead sufficient facts for the Court to reasonably infer that the City discriminated against Plaintiffs on the basis of their race and that Plaintiffs' Section 1983 claim against the City of Garland should be dismissed without prejudice to repleading to address these deficiencies. But, accepting all well-pleaded facts as true and viewing them in the light most favorable to Plaintiffs, the undersigned concludes that Defendants' limitations defense does not support dismissal under Rule 12(b)(6) where the Second Amended Complaint does not affirmatively show that Plaintiff's Section 1983 is time-barred.

For all of these reasons, the undersigned recommends that the Court grant Defendant City of Garland, Texas' Partial Motion to Dismiss [Dkt. No. 26] and dismiss without prejudice Plaintiffs' Section 1983 claim against the City of Garland.

II.    <u>Plaintiffs have stated a Section 1983 claim against Breysacher.</u>

Breysacher contends that Plaintiffs cannot allege a Section 1981 claim against him individually and that they fail to state a Section 1981 claim against him because they do not allege that he intentionally engaged in discriminatory conduct that resulted in an adverse employment action but instead they allege that he was

Plaintiffs' supervisor and was or should have been aware of the conduct of others.

Breysacher's reliance on *Oden v. Oktibbeha County*, 246 F.3d 458, 464 (5th Cir. 2001), is misplaced. As Judge Lindsay has explained, *Oden* does not hold that a plaintiff cannot pursue a Section 1981 claim against a local government official in his personal capacity for violations of Section 1981, but only that a plaintiff must bring the suit pursuant to Section 1983, *see Harris*, 9 F. Supp. 3d at 703, which Plaintiffs have done in this case. Judge Lindsay also notes the distinction drawn in *Oden* between the liability of elected and appointed local officials for violations of section 1981. *See id.* Breysacher is not an elected official, and "the Fifth Circuit has recognized a cause of action [under section 1981] against an unelected government employee in his individual capacity." *Id.* (citing *Knox v. City of Monroe*, 551 F. Supp. 2d 504, 509 (W.D. La. 2008)).

To state a section 1981 claim, a plaintiff must allege facts showing that he or she was the subject of intentional discrimination. *See Coleman v. Houston Indep. Sch. Dist.*, 111 F.3d 528, 533 (5th Cir. 1997). Plaintiffs plead that, in 2015, Breysacher was personally involved in placing a stuffed monkey in another employee's chair and replacing his name plate with the name Bozo Chimp. Plaintiffs also reported to Breysacher that the markers representing their names had been removed from the office name board. Plaintiffs allege that prior to 2015, Breysacher stated that "he had to dummy dowon things for the black workers," and Plaintiffs reported many incidents of discrimination and harassment to their supervisor, Breysacher, to no avail.

Based on these allegations and the allegations in the Second Amended

Complaint as a whole, the undersigned concludes that Plaintiffs have pleaded sufficient facts for the Court to reasonably infer that Glenn Breysacher discriminated against Plaintiffs on the basis of their race.

Finally, Breysacher contends that if Plaintiffs are allowed to assert a Section 1981 claim against him, he is entitled to qualified immunity, "which he will assert as a defense to the extent that his motion to dismiss is not granted." *See* Dkt. No. 30 at 3-4 ("Additionally, to the extent that a claim did exist pursuant to 42 U.S.C. § 1981, as a governmental employee, Defendant Breysacher would be entitled to qualified immunity, which he will assert as a defense to the extent that his motion to dismiss is not granted. The Plaintiffs wholly fail to allege any facts which would overcome Defendant Breysacher's qualified immunity defense."). A defendant must affirmatively plead the defense of qualified immunity, *see Harris*, 9 F. Supp. 3d at 696 (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)), and Breysacher, by his own admission, has not yet pleaded or filed a motion on this defense or made other than passing reference to it. Accordingly, although, if he does raise a qualified immunity defense, there may be further implications for the progress of this case, that issue is not properly before the Court. *See Waller v. City of Fort Worth*, No. 4:15-CV-670-Y, 2015 WL 5836041, at *3 (N.D. Tex. Oct. 2, 2015) ("As recently summarized succinctly by the United States Court of Appeals for the Fifth Circuit, the 'careful procedure' set forth in *Backe*, *Wicks*, and *Lion Boulos* requires the district court to first make an initial determination that Plaintiffs' allegations, if true, would defeat qualified immunity and then to 'identify any questions of fact it need[s] to resolve before it [is] able to determine whether the

defendants were entitled to qualified immunity.'" (quoting *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014)).

For all of these reasons, the undersigned recommends that the Court deny Defendant Glenn Breysacher's Motion to Dismiss [Dkt. No. 30].

## Recommendation

For the reasons and to the extent explained above, the Court should grant Defendant City of Garland, Texas's Partial Motion to Dismiss Plaintiffs' Second Amended Complaint [Dkt. No. 26] and dismiss without prejudice Plaintiffs' 42 U.S.C. § 1983 claim against the City of Garland and should deny Defendant Glenn Breysacher's Motion to Dismiss [Dkt. No. 30].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v.*

-23-

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 1, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE